UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BATTELLE MEMORIAL INSTITUTE,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>HANFORD MULTI-EMPLOYER PENSION PLAN, HAMTC REPRESENTED EMPLOYEES; PENSION & SAVINGS PLANS COMMITTEE c/o MISSION SUPPORT ALLIANCE, LLC,<br><br>　　　　　　Defendants. | NO. 4:17-CV-5080-TOR<br><br>ORDER GRANTING MOTION TO DISMISS; AWARDING ATTORNEY FEES |

BEFORE THE COURT is Defendants Hanford Multi-Employer Pension Plan, HAMTC Represented Employees and Pension & Savings Plans Committee's Motion to Dismiss (ECF No. 10). The Motion was submitted for consideration without oral argument. The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, the Motion to Dismiss (ECF No. 10) is **GRANTED**.

ORDER GRANTING MOTION TO DISMISS; AWARDING ATTORNEY FEES ~ 1

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss the complaint or a particular claim for "failure to state a claim upon which relief can be granted." To survive dismissal, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires the plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555.

When deciding, the Court may consider the plaintiff's allegations and any "documents incorporated into the complaint by reference . . . ." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citation omitted). Plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff[,]" but "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted).

//

//

//

# BACKGROUND[1]

The instant action involves Plaintiff Battelle Memorial Institute ("Battelle") and its liability for withdrawing from the Hanford Multi-Employer Pension Plan, HAMTC Represented Employee ("Hanford Plan") administered by Hanford Pension & Savings Plans Committee ("Plan Administrator") and governed by the Employee Retirement Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA"). ECF No. 1 at ¶ 1.

Pursuant to ERISA, employers participating in a pension plan subject to ERISA are subject to withdrawal liability upon withdrawal from the plan. This liability arises because the employer's departure leaves the plan with unfunded liabilities in the form of future pension benefits to the withdrawing employer's employees. *See* 29 U.S.C. § 1381. The amount of withdrawal liability is calculated according to a formula provided by ERISA. *See* 29 U.S.C. §§ 1382, 139l(c).

Battelle participated in the Hanford Plan – an ERISA governed plan – as an employer for some time, but decided to withdraw from the Hanford Plan after an underlying collective bargain agreement allowed Battelle to sponsor its own

---

[1] The background facts are gleaned from Plaintiff's Complaint (ECF No. 1) and the exhibits included with the Complaint.

ORDER GRANTING MOTION TO DISMISS; AWARDING ATTORNEY FEES ~ 3

employer plan. ECF No. 1 ¶¶ 15-17. Battelle withdrew from the Hanford Plan on July 1, 2016. ECF No. 1 at ¶ 18.

Before Battelle's ultimate withdrawal, the Hanford Plan's actuary provided a withdrawal liability estimate to Plaintiff of "'approximately $14,200,000,' with the final withdrawal liability to be based on final December 31, 2015 assets and actual January 1, 2016 valuation results." ECF No. 1 at ¶¶ 19-21. In June of 2016, the parties entered into a Settlement Agreement obligating Battelle to "make a withdrawal liability payments totaling 'approximately $14,200,000' on or before June 30, 2017." ECF No. 1 at ¶¶ 22-23; *see* ECF No. 1 at 15 (Settlement Agreement). As Plaintiff states, "[t]he term 'approximately' was used by the parties in the Settlement Agreement to account for adjustments for the final value of the Hanford plan assets as of December 31, 2015, and the January 1, 2016 actuarial valuation results." ECF No. 1 at ¶ 24.

According to the Complaint, "[i]n a letter to MSA, on behalf of the Plan Administrator, dated September 2, 2016, [the actuary] determined that Battelle's withdrawal liability that was previously estimated to be $14,200,000 should be adjusted to $14,784,602 based on the final asset and liability calculations contemplated by Battelle and the Hanford Plan." ECF No. 1 at ¶ 28. However, the letter actually states that the withdrawal liability is "$15,407,693, $623,091 of

which is due to the contributions made by Battelle Toxicology Northwest ('BTNW')[2] during the plan years 2011, 2012 and 2013." ECF No. 1 at 42.

On December 1, 2016, Battelle submitted a request for review disputing *only* the $623,091 while paying the undisputed portion of the assessment in the amount of $14,784,602. ECF No. 1 at ¶¶ 28, 32; *see* ECF No. 1 at 58 (Letter). The Hanford Plan responded in a letter dated March 20, 2017. ECF No. 1 at 62. On May 18, 2017, Battelle initiated arbitration regarding the disputed amount "pursuant to Section 4221(a) of ERISA." ECF No. 1 at ¶ 35.

On June 12, 2017, Battelle filed this action requesting a declaratory judgment that Defendants did not have the authority to assess the disputed withdrawal liability based on calculations including BTNW employees. ECF No.

---

[2] According to Plaintiff, BTNW "was, until 2013, a separate business unit of Battelle that operated out of the Pacific Northwest National Laboratory ('PNNL') facilities"; "[c]ertain hourly employees at Battelle Toxicology were represented by HAMTC and were active participants in the Hanford Plan until 2013"; and "[f]or the period from 2007 to 2013, the contributions for the Battelle Toxicology participants in the Hanford Plan were paid directly by the contributing employer, Battelle." ECF No. 1 at ¶ 10.

1 at ¶¶ 38-43. Battelle also included a claim for breach of contract, asserting Defendants breached the Settlement Agreement in assessing the disputed withdrawal liability.

Defendants now move to dismiss the case, arguing the action involves a dispute about the establishment and calculation of the withdrawal liability—an issue subject to mandatory arbitration under ERISA. *See* ECF Nos. 10; 12. Battelle opposes the Motion, arguing the instant dispute merely involves a question of whether Defendants have the authority to assess the disputed withdrawal liability. ECF No. 11 at 3.

## DISCUSSION

The scope of mandatory arbitration in the ERISA context is governed by statute:

> Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of the Multiemployer Pension Plan Amendments shall be resolved through arbitration.

29 U.S.C. § 1401(a)(l) (emphasis added). The parties agree that issues concerning the establishment, calculation, and collection of withdrawal liability are subject to arbitration. *See* ECF No. 11 at 10 (Plaintiff's Response) (citing *Operating Engineers' Pension Trust Fund v. Clark's Welding and Machine,* 688 F. Supp. 2d 902 (N.D. Cal. Feb. 10, 2010)).

The instant action is clearly a dispute about the establishment and calculation of Plaintiff's withdrawal liability and is thus subject to mandatory arbitration. Plaintiff attempts to caste the instant dispute as merely an issue of contract interpretation, but this is not the case. Although Plaintiff points to contract language stating there will be no further withdrawal liability,[3] among other things, this cannot undermine the clear language that the amount of $14,200,000 was an <u>approximation</u> of the ultimate withdrawal liability to be determined by future calculation. This calculation is what Plaintiff now disputes under the guise of interpreting the word "approximate" in the Settlement Agreement.[4]

---

[3] Plaintiff cites the language in the Settlement Agreement that states the Agreement "shall be in complete and full satisfaction of any withdrawal liability that may otherwise be incurred, imposed or assessed against Battelle with respect to the Hanford Plan for any reason." ECF No. 1 at ¶ 26.

[4] Without any real explanation, Plaintiff argues the term "approximately . . . did not contemplate that the Hanford Plan would include additional pools of former Battelle employees in allocating the unfunded vested benefits to Battelle." ECF No. 1 at ¶ 25. There is nothing in the Settlement Agreement indicating such a limitation on the manner of calculating the withdrawal liability, which is regulated by statute.

Plaintiff's contention that "the Hanford Plan lacked authority to make a Post-Settlement Assessment[,]" ECF No. 11 at 9, is inconsistent with its own conduct in paying part of what it calls the Post-Settlement Assessment. Battelle paid the Hanford Plan $14,784,602 for its withdrawal liability, ECF No. 11 at 12, which exceeded the initial estimate of $14,200,000, and only disputes the inclusion of additional pools of employees in the calculation. ECF No. 1 at ¶ 25. This undermines Battelle's position that the amount of withdrawal liability was a settled issue and that Defendants lacked authority to assess the later-determined withdrawal liability.[5]

Accepting Battelle's position that the Hanford Plan did not have the authority to assess the disputed withdrawal liability would require the Court to accept Battelle's underlying premise that the Settlement Agreement was a deal allowing Battelle to evade withdrawal liability assessed pursuant to ERISA—after

---

[5] Moreover, Battelle essentially concedes the dispute is subject to mandatory arbitration. According to the complaint, Battelle initiated arbitration over the disputed amount "pursuant to Section 4221(a) of ERISA." ECF No. 1 at ¶ 35. This section is limited to disputes "concerning a determination made under sections 1381 through 1399 of this title"—the very scope of the arbitration mandate.

all, Battelle has not argued the liability arising from the "additional pools" is not valid per ERISA, rather Battelle argues Defendants cannot assess such liability per the Settlement Agreement.  First, Battelle's own letter indicates the intent was not to evade liability, but was rather to determine the *actual* liability at an earlier date. ECF No. 1 at 59 ("By entering into the Settlement Agreement before the complete withdrawal had actually occurred, Battelle was attempting to obtain an early determination by the Hanford Plan of the amount of withdrawal liability."). Second, if the parties' intent was to evade actual withdrawal liability, the Court cannot enforce such an agreement—Congress mandated withdrawal liability to protect the plan's otherwise unfunded liabilities and this cannot simply be contracted around.  29 U.S.C. § 1392(c) (1982) ("If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction.").

Plaintiff also includes a claim for breach of contract arising out the disputed assessment.  Casting withdrawal liability as a breach of contract does not bypass ERISA's mandatory arbitration provision.

As an additional matter, Defendants moved for attorney fees pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132, and Section 4301 of the MPPAA, 29 U.S.C. § 1451, which give the Court discretion to award costs and expenses,

including reasonable attorney fees, to the prevailing party who is adversely affected by the act or omission of a party with respect to a multiemployer plan. 29 U.S.C. § 1132(g); 29 U.S.C. § 1451(a), (e); *Penn Cent. Corp. v. Western Conference of Teamsters Pension Trust Fund*, 75 F.3d 529, 535 (9th Cir. 1996). The Court finds (1) Plaintiff's suit is clearly subject to mandatory arbitration and that Plaintiff's contention otherwise is unfounded; (2) Defendants are the prevailing parties; (3) an award of costs and expenses, including attorney fees, to Defendants is just and proper; and (4) the Court has discretion to award such fees pursuant to ERISA and the MPPAA. As Defendants have only requested fees incurred in bringing the Motion to Dismiss, ECF No. 10 at 17, the award is limited to such.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss (ECF No. 10) is **GRANTED**.
2. Defendants are entitled to costs and expenses, including attorney fees, in bringing the Motion to Dismiss. **Within 14 days** of this Order, Defendant's shall file a properly supported fee petition, substantiating the reasonableness of the hours and rate sought, and any costs. Plaintiff may file a response and Defendant may file a reply according to LR 7.1.
3. The fee request shall be heard without oral argument on **December 8, 2017.**

ORDER GRANTING MOTION TO DISMISS; AWARDING ATTORNEY FEES ~ 10

4. The Clerk of Court shall delay entry of Judgment pending resolution of attorney fees, costs and expenses.

The District Court Executive is directed to enter this Order, furnish copies to counsel.

**DATED** October 27, 2017.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING MOTION TO DISMISS; AWARDING ATTORNEY FEES ~ 11